DENVER & R. G. R'Y CO. v. BOURNE.

1. If a railway company constructs and operates a railroad in a public street it is liable to the owner of property abutting on such street, notwithstanding an ordinance of the municipality in terms authorized such use of the street, for the actual diminution in market value of the property for any use to which it may be reasonably put, occasioned by the construction and operation of the railway through such street.
2. On the trial of an action for damages for the depreciation in value of plaintiff's property, occasioned by the construction and oper-

ation of defendant's railway in the streets upon which plaintiff's property abuts, plaintiff and others, against the objection of defendant, testified as to the decrease in the rents and rental value of the property by reason of the construction of the railroad, but that they did not know its market value before or since the building of the said railroad. *Held*, that this evidence, having been properly qualified by the instructions given, was admissible to aid in determining the actual depreciation of the realty and improvements in market value.

3. In an action for damages for the depreciation in value of property, occasioned by the construction and operation of a railway in the street on which the property abuts, where there is a conflict in the evidence as to the amount of depreciation of the property, part of the witnesses placing it as greater than that found by the jury, and the jury having viewed the premises, the verdict will not be set aside as excessive.

*Error to District Court of Arapahoe County.*

Mr. E. O. WOLCOTT, for plaintiff in error.

Messrs. BROWNE and PUTNAM, for defendant in error.

STALLCUP, C. In the year 1881 the defendant in error was the owner of three lots abutting on Wewatta street in the city of Denver, a street then open and used by the public. He had buildings on his said lots, used and rented for meat-market, grocery and saloon. They were accordingly occupied by tenants in September of that year, when the plaintiff in error constructed its railway along and upon the center of the said street, where the said premises of defendant in error abutted thereon. At the same time the Union Pacific Railroad Company constructed a railway there upon the side of said street, and a few months thereafter the Burlington & Missouri River Railroad Company also constructed a railway upon the other side of the said street, and all were for permanent use for railway purposes, and accordingly have been used; and such construction and operation were in terms authorized by ordinances of the said city of Denver. The defendant in error brought his action to recover damages

for the depreciation in value of his said premises, occasioned by the construction, operation and maintenance of the railway of plaintiff in error there, and, on the trial of this case against the plaintiff in error, recovered judgment. The case comes here by writ of error to reverse this judgment.   Errors are assigned and argued upon the liability of the plaintiff in error, and the extent thereof, the admission of evidence, the instructions to the jury given and refused, and the measure and amount of damages allowed.

When the construction and operation of a railway in a street causes a depreciation in the market value of the property abutting thereon, the railway company is liable to the owner of such property, notwithstanding an ordinance of the municipality in terms authorized such use of the street. *City of Denver v. Bayer*, 7 Colo. 113; 2 Pac. Rep. 6; *Railway Co. v. Nestor*, 15 Pac. Rep. 714 (in this court; opinion recently filed).   And the limit to such liability is clearly stated in the former case as follows: "The measure of compensation is the actual diminution in the market value of the premises for any use to which they may reasonably be put, occasioned by the construction and operation of the railway through the adjacent street."

Upon the trial the defendant in error in his own behalf testified that he did not know the amount of depreciation to his property caused by the construction and operation of the railway of plaintiff in error in this street; neither did he know the market value of the property there at the time of such construction, before nor since; and, against the objection of plaintiff in error, was allowed to testify that the rents of the property were of the aggregate amount of $105 per month until this railway was constructed there, and soon thereafter went down to $55 per month; that the place which had been fixed up and rented for a meat-market ceased to be of value for that purpose, so that he had to take out the

fixtures and rent it for much less and for other purposes; that he continued to rent the other two places for grocery and saloon purposes at reduced rentals, as stated; that trade was turned away by reason of the street being occupied by the railway tracks and the engines and cars there, and that the rental value of his said buildings was thereby depreciated from $105 to $55 per month; that the railway of plaintiff in error was used as a switch-yard or a track upon which to stand cars. And other witnesses were likewise allowed to testify that the railway tracks in the street and the engines and cars thereon kept trade away from the premises of defendant in error and depreciated the rental value thereof. It is argued here that it was error to admit such evidence. In the case of *City of Denver v. Bayer, supra,* after laying down the rule as above stated, the court add: "The jury must not, of course, consider any fluctuations in value resulting from other causes. No personal inconvenience or annoyance, no interference with his trade or business, no decrease in the rental value of his premises occasioned by the construction and operation of the railroad, and no temporary interruption or damage thereby, constitutes the test. None of these things can enter into the question, except as they may appropriately aid in determining the actual depreciation in market value of the realty and improvements. If, by reason of the proximity of the railroad thereto, plaintiff's property is in any way peculiarly benefited, — that is, if he experiences a benefit therefrom not shared generally by the property owners of the city, — such benefit should be considered and the value thereof allowed in determining the amount of his compensation." We think this evidence was admissible for the purpose stated, and having been properly qualified by the instructions given to the jury, there was no error in the admission thereof.

Five instructions were requested by plaintiff in error, to the effect that the ordinance of the city granting the

right to the plaintiff in error to so use the street was a
protection to the plaintiff in error in such use, and a de-
fense to the action, all of which were refused; and then
instructions were requested by plaintiff in error, and
given with certain modifications added by the court upon
its own motion.  The instructions refused were contrary
to the law as declared by this court in the two cases re-
ferred to, and therefore were properly refused.  As to
the other instructions asked, and given with modifica-
tions:  As given, they were comprehensive of the two
questions thereby submitted to the jury, to wit:  Had
the construction, operation and maintenance of the rail-
way of plaintiff in error depreciated the market value of
the said property of defendant in error, and, if so, how
much?  And the rule laid down in the said case of
*City of Denver v. Bayer* was properly stated by the
court.

It is urged here for plaintiff in error that the verdict
was contrary to the evidence and the law, and the amount
thereof was excessive.  As to the effect upon this prop-
erty occasioned by the construction and operation of
these railways, conflicting opinions are shown.  Witness
Mollandin testified for defendant in error that the said
premises of defendant in error were worth ten or twelve
thousand dollars before the construction of the railways
upon the street there; that each of the three railways
produced about equal effect in 'damaging the property;
that the premises were depreciated about one-half by
reason of the construction and operation of these rail-
ways there, — and other witnesses testified to much the
same effect for defendant in error; while for plaintiff in
error witness McCullough testified that the construction
and operation of these railways upon the street had ad-
vanced the value of the property along the street; that
while the value of the buildings upon the premises of the
defendant in error may have been injuriously affected by
the construction and operation of the railways there, the

market value of the property had been advanced by the same,— and other witnesses testified to much the same effect. In view of the facts, as shown by the evidence, that there were three railways in this street; that there was a general and rapid growth and development of the city going on; and that there was a change in the character of property, and the demand therefor, in certain parts of the city, occasioned by the building and operation of railways and other enterprises therein,— it is not strange that there should be different opinions entertained as to the effect upon the property abutting upon this street, produced by the construction and operation of these railways there. So there was a conflict in the evidence. There was evidence for the defendant in error placing the depreciation of the property greater than that found by the jury. Besides, the jury viewed the premises, and agreed that the said premises of defendant in error on said street had been depreciated in value $823 by the construction and operation of the railway of plaintiff in error there.

We see nothing in the record to warrant a reversal of the judgment. The judgment should be affirmed.

We concur: DE FRANCE, C.; RISING, C.

PER CURIAM. For the reasons assigned in the foregoing opinion the judgment is affirmed.

*Affirmed.*